**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Anastasia M. Cantonis,

                Plaintiff,

v.

Stryker Corporation and Stryker Sales Corporation,

                Defendants.

Civ. No. 09-3509 (JRT/JJK)

**REPORT AND RECOMMENDATION**

Elisha N. Hawk, Esq., Robert K. Jenner, Esq., and Brian D. Ketterer, Esq., Janet, Jenner & Suggs, LLC; Gregory L. Laker, Esq., and Irwin B. Levin, Esq., Cohen & Malad, LLP; Yvonne M. Flaherty, Esq. and Nathan Prosser, Esq., Lockridge Grindal Nauen, PLLP for Plaintiff.

Vaughn Crawford, Esq., Snell & Wilmer L.L.P.; Timothy P. Griffin, Esq., Brian W. Thomson, Esq., Frederick W. Morris, Esq., Leonard Street and Deinard, PA for Defendants.

This matter is before the Court on Defendants Stryker Corporation and Stryker Sales Corporation's Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. No. 30.) The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1 and 72.2. For the reasons set forth below, this Court recommends that Defendants' motion to dismiss be denied.

1

## BACKGROUND

**The Parties**

Plaintiff Anastasia M. Cantonis is a resident of Georgia. Defendants Stryker Corporation and Stryker Sales Corporation ("Defendants" or "Stryker Defendants") are Michigan corporations with their principal places of business in Kalamazoo, Michigan. Defendants tested, manufactured, labeled marketed, distributed, promoted, and sold their pain pumps in Minnesota during all times relevant to Plaintiff's Complaint.

**Plaintiff's Surgeries**

Plaintiff had two arthroscopic shoulder surgeries while she was a student at Southern Methodist University in Dallas, Texas:[1] the first, on May 17, 2004; the second, on July 18, 2005. Following both surgeries, a pain pump manufactured by Stryker Corporation was implanted in Plaintiff's shoulder, delivering anesthetic to the "joint space" in the shoulder. She ultimately experienced a complete degradation of the cartilage in her surgically repaired shoulder joint, a condition known as chondrolysis. Plaintiff alleges that her chrondolysis was caused by Stryker's pain pump, and in particular the injection of pain medication directly into the shoulder cartilage. She also alleges that Stryker knew or should have known that the pump could cause chondrolysis, and that

---

[1] While unclear on the face of the Complaint, at the motion to dismiss hearing, Plaintiff's counsel noted that while Plaintiff's surgeries occurred in Texas, where she was a college student, Plaintiff's state of residence continued to be Georgia.

Stryker nonetheless encouraged physicians to use the pump in ways that were likely to cause chondrolysis.

## ANALYSIS

**I.     Standard of Review**

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."  A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

**II.     Plaintiff's First Amended Complaint**

Less than six weeks ago, the Honorable Paul A. Magnuson entered three orders in related Pain Pump cases—*Thomson v. Stryker Corp*, Civ. No. 10-1560, slip op. at 2-3 (D. Minn. Oct. 14, 2010), *Cost-Ertle v. Stryker Corp*, Civ. No. 10-

2969, slip op. at 2-3 (D. Minn. Oct. 14, 2010), and *Mack v. Stryker Corp*, Civ. No. 10-2993, 2010 WL 4386898, at *1 (D. Minn. Oct. 28, 2010)—denying the Stryker Defendants' motions to dismiss complaints that were virtually identical to the Complaint in this matter. There, as in the present case, Defendants argued that Plaintiffs insufficiently pled facts to satisfy the 12(b)(6) standard under *Twombly* and *Iqbal*, and that Plaintiff's fraud claims were not pled with sufficient particularity under Fed. R. Civ. P. 9(b). As they do here, in *Thomson* and *Cost-Ertle,* the Defendants asked the Court to engage in fact-intensive choice of law determinations at the pleadings stage, arguing—with minimal analysis—that Minnesota law should not be applied to Plaintiff's claim. Judge Magnuson concluded as follows:

> Defendants' Motions are not in fact motions to dismiss, but rather are extraordinarily premature motions for summary judgment. Defendants cite depositions, studies, and other documents that are not part of the pleadings. Moreover, the case they rely on repeatedly, *Phillippi v. Stryker Corp.*, No. 2:08-cv-02445, 2010 WL 2650596 (E.D. Cal. July 1, 2010), is a summary judgment case, not a motion to dismiss. Indeed, nearly every one of Defendants' arguments require the Court to weigh evidence, examine depositions, or the like. When evaluating a Motion to Dismiss, the Court must look at the face of the complaint to determine whether it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1938, 1949 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Eighth Circuit has emphasized that courts considering motions to dismiss must "take the plaintiff's factual allegations as true." *Braden v. Wal-Mart Stores*, Inc., 588 F.3d 585, 594 (8th Cir. 2009). . . . The premise of Defendants' Motions is

4

> that the Court should not take the allegations in the
> Complaint as true. This is simply not permitted in the
> context of a motion to dismiss. Defendants' Motions to
> Dismiss are denied.

*Thomson*, Civ. No. 10-1560, slip op. at 3; *Cost-Ertle*, Civ. No. 10-2969, slip. op. at 3.

The same is true here. This Court is satisfied that Plaintiff's First Amended Complaint sufficiently pleads Plaintiff's causes of action to satisfy the pleading standards under Fed. R. Civ. P. 8(a) relating to the general rules of pleading, as well as the heightened pleading standard of Fed. R. Civ. P. 9(b) for Plaintiff's fraud-based claims. The Eighth Circuit consistently emphasized that:

> *Twombly* and *Iqbal* did not abrogate the pleading
> standard of Rule 8(a)(2) [requiring a "short and plain
> statement of the claim showing that the pleader
> is entitled to relief"]. Rather, those decisions confirmed
> that Rule 8(a)(2) is satisfied "when the plaintiff pleads
> factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the
> misconduct alleged."

*Hamilton v. Palm*, — F.3d —, 2010 WL 3619580, at *1 (8th Cir. Sept. 20, 2010) (quoting *Iqbal*, 129 S. Ct. at 1949). Here, the Complaint sets forth sufficient facts underlying each claim: (1) negligence (Doc. No. 23, First Am. Compl. ("Am. Compl.") ¶¶ 57-67); (2) fraud (*Id.* ¶¶ 68-76); (3) strict products liability (*Id.* ¶¶ 77-86); (4) strict tort liability– failure to warn (*Id.* ¶¶ 87-92); and (5) breach of implied warranty (*Id.* ¶¶ 93-98). Plaintiff's Complaint also contains a detailed "Preamble", "Factual Allegations", and "Statute of Limitations and Fraudulent

5

Concealment" sections (*Id.* ¶¶ 1-8, 14-37, and 38-56), setting forth factual allegations relating to and further supporting Plaintiff's claims.

Defendants also assert, with minimal explanation, that Texas state law applies to all of Plaintiff's claims. It is premature, however, to perform a choice-of-law analysis on the motion-to-dismiss-record now before the Court. Without further discovery, it is difficult to determine which state law should be applied to Plaintiff's claims. Plaintiffs insist that Texas law applies because Plaintiff's two surgeries occurred there. But if Plaintiff was a resident of Georgia during her surgeries in Texas, then Georgia law arguably could apply. Yet, Defendants provide no choice-of-law analysis on Georgia law.

Defendants also argue that the application of Minnesota law is constitutionally impermissible in this case because "Minnesota's only contact with this case is the fact that Plaintiff's counsel maintains an office and chose to file here." (Doc. No. 32, Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") 20.) This Court disagrees. First, Plaintiff's Complaint specifically alleges that "at all times relevant hereto, Stryker was engaged in Minnesota in the testing, manufacturing, labeling, marketing, distributing, promoting and selling of elastomeric pain pumps." (Doc. No. 23, Am. Compl. ¶ 10.) By conducting their business activities in Minnesota, Defendants had notice of potential lawsuits brought under Minnesota law and cannot claim unfair surprise. Based on the allegations in the Complaint, this Court is not prepared to conclude that the application of Minnesota law to this case is so arbitrary and fundamentally unfair

6

as to violate due process. In the end, each choice-of-law case analysis presents its own unique combination of facts—the parties' residence, the place and type of occurrence and the specific set of governmental interests—that influence the resolution of the choice-of-law issues presented. This Court cannot make the fact intensive choice of law determination on the record before it at this juncture. *See In re Guidant Corp. Implantable Defibrillators Products Liab. Litig.*, 484 F. Supp. 2d 973, 985 n.7 (D. Minn. 2007) (evaluating the sufficiency of Plaintiff's subrogation claim on a motion to dismiss and stating that "[t]here is no need to perform a choice of law analysis at this stage of the proceedings" to determine whether Minnesota or Pennsylvania law applies").

### III. Misrepresentation and Fraudulent Concealment

As to Defendants' contention that Plaintiff has not pled her fraud claim with sufficient particularity, "Rule 9(b) does not require that a 'complaint be suffused with every minute detail of a misrepresentation. . . .'" *McGregor v. Uponor, Inc.*, Civ. No. 09-1136, 2010 WL 55985, *4-5 (D. Minn. Jan. 4, 2010) (quoting *Carlson v. A.L .S. Enterprises, Inc.,* No. 07-3970, 2008 WL 185710, at *3 (D. Minn. 2008)). In *McGregor*, for example, the court held that a complaint has sufficiently alleged the fraud-based claim of negligent misrepresentation—which, like fraud, must be pled with particularity as required under Fed. R. Civ. P. 9(b)—where the complaint stated that misrepresentations were made "in advertising, marketing, and promotional materials, on [the defendants'] websites . . . and through sales representatives . . ." *Id.* The court also found that "although many

7

of Plaintiffs allegations do not identify a specific date or month, a plaintiff is not required to plead the exact dates on which misrepresentations were made." *Id.* at *4 (citing *Solvay Pharms., Inc. v. Global Pharms.*, 298 F.Supp.2d 880, 885-86 (D. Minn. 2004) (allegation that defendants had been improperly marketing their products as "generic" versions of plaintiff's drugs on ongoing basis for the past "several years" sufficient under Rule 9(b)). There, the court focused on whether the complaint "provides adequate information about events and their chronology to allow [Defendant] to ascertain what is alleged and to adequately craft a response." *Id.* at *4.

This Court concludes that Plaintiff's complaint details the Stryker Defendants' fraud and misrepresentation with even more particularity than the allegations in *McGregor*. Here, the Complaint contains numerous allegations that detail the fraudulent misrepresentations and include the identity of specific Stryker agents and sales representatives. For example, Paragraph 69 alleges that "Stryker agents and sales representatives, including Garrett Adams, knowingly, intentionally, directly and/or impliedly made material misrepresentations to Ms. Cantonis, Ms. Cantonis's physicians, and to the public that pain pumps and the anesthetics used in the pumps were safe for use following shoulder surgeries, such as Ms. Cantonis'." (Doc. No. 23, Am. Compl. ¶ 69.) This case is distinguishable from *Forslund v. Stryker Corp.*, Civ. No. 09-2134, 2010 WL 3905854, *5 (D. Minn. Sept. 30, 2010) (Tunheim, J.), where Plaintiff failed to "identify who made representations to [Plaintiff] or his surgeon,

8

the content of those representations, or when the representations were made." (*Compare* Doc. No. 23, Am. Compl. ¶¶ 24-56, 68-76 with *Forslund*, Civ. No. 09-2134, Doc. No. 1).  In *Forslund*, the Complaint also "[did] not allege facts by which to determine that the representations were false at the time they were made." *Forslund*, 2010 WL 3905854, at *5.  But here, Plaintiff's Complaint sets forth specific allegations regarding Defendants and their sales representatives' marketing and promotional efforts, and alleges that Defendants encouraged surgeons to use the devices intra-articularly in knees and shoulders and represented that they were safe despite the alleged knowledge and evidence to the contrary.  (Doc. No. 23, Am. Compl. ¶¶ 24-56.)  And, the Complaint alleges acts and omissions relating to fraudulent concealment. (*Id.* ¶¶ 38-56.)  In sum, the Complaint sufficiently alleges that:  (1) Defendants made false representations regarding a past or present fact; (2) Defendants' false representations were material and susceptible of knowledge; (3) Defendants knew the representations were false or made the representations without knowing whether it was true or false; (4) Defendants intended for Plaintiff, her doctors, and the public to rely on the representation; (5) Plaintiff reasonably relied on the representations; and (6) Plaintiff suffered damages due to the representations. *See Todd County v. Barlow Projects, Inc.*, Civ. No. 04-4218, 2005 WL 1115479 *3 (D. Minn. May 11, 2005) (citing *Masepohl v. Am. Tobacco Co.,* 974 F.Supp. 1245, 1250 (D. Minn.1997)).  As Judge Magnuson put it:  "[A]t this stage of the litigation. . .it is not clear what other allegations Defendants

9

would have [Plaintiff] include in her fraud claims. She does not yet have access to evidence; discovery has not commenced. Her claims are sufficient to withstand Defendants' Motion to Dismiss." *Mack*, 2010 WL 4386898, at *3.

**IV.    Statute of Limitations**

Defendants' argument that some of Plaintiff's claims are time-barred under Texas law, Minnesota law, or both, is equally unavailing. First, Defendants' statute-of-limitation argument is based, in part, on the application of Texas law. As set forth above, this Court is not prepared to conclude that Texas law applies. A choice of law analysis is premature at this stage because it requires resolution of fact issues beyond the scope of this 12(b)(6) motion to dismiss. Second, in arguing that Plaintiff's claims are time-barred under Minnesota and Texas law, Defendants misstate the standard governing the accrual of claims in products liability cases. Finally, bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008); Fed.R.Civ.P. 8(c). The possible existence of a statute-of-limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense. *See Varner v. Peterson Farms*, 371 F.3d 1011, 1016-18 (8th Cir.2004) (concluding that dismissal was proper because complaint ruled out tolling of statute of limitations). Here, this Court concludes that Plaintiff's claims are not time barred on the face of the Complaint.

A statute-of-limitations analysis at this stage would not avail Defendants in any event. "[The Minnesota Supreme Court has] considered statutes of limitations to be procedural without exception." *Fleeger v. Wyeth,* 771 N.W.2d 524, 528 (Minn. 2009) (footnote omitted). Thus, the Minnesota statute of limitations applies "regardless of whether [a case has] any connection to this state." *Id.* Minnesota adopted the Uniform Conflict of Laws--Limitations Act in 2004. It applies "to claims arising from incidents occurring on or after August 1, 2004." Minn. Stat. § 541.34. Section 541.31, subdivision 1 of the Act provides that "if a claim is substantively based ... upon the law of one other state, the limitation period of that state applies," or if it is based "upon the law of more than one state, the limitation period of one of those states chosen by the law of conflict of laws of this state applies." Minn. Stat. § 541.31, subd. 1.

A. First Surgery

Here, Plaintiff's first surgery and pain pump implant occurred in May 2004. Thus, on the face of the Complaint, Minnesota's limitation period applies to her claims relating to the first pain pump implantation. The relevant limitations periods are as follows: four years for strict product liability, Minn. Stat. § 541.05, subd. 2; six years for negligence, Minn. Stat. § 541.05, subd. 1(5); four years for breach of warranty, Minn. Stat. § 336.2-725(1); and six years for fraud, Minn. Stat. § 541.05, subd. 1(6).

Plaintiff commenced her lawsuit on December 8, 2009. Defendants argue that some of Plaintiff's claims related to the first surgery, including strict product liability, are time-barred under Minnesota law. This Court disagrees.

First, Minnesota courts adhere to the discovery rule in products liability actions. Defendants incorrectly rely on two professional malpractice cases—*Hermann v. Mcmenomy & Severson et al.*, 158 N.W.2d 580, 584 (Minn. 1968) and *Antone v. Mirviss*, 720 N.W.2d 331, 335 (Minn. 2006)—for the rejection of the "discovery rule" and the proposition that the statute of limitations begins to run at the time of injury, regardless of the victim's awareness or lack of awareness of the injury or its cause. Under *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987), and its progeny, the discovery rule is controlling in products liability actions. "None of the cases on which Defendants rely indicate that Minnesota courts disagree with *Hildebrand*, and the Court has found no such disagreement." *Mack*, 2010 WL 4386898, at *2. Indeed, numerous courts have applied the discovery rule in products liability and negligence actions. *See Klempka v. G.D. Searle & Co.,* 963 F.2d 168, 170 (8th Cir. 1992) (holding that a claim accrues when two elements are present: "(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission." (quoting *Hildebrandt*, 839 F.2d at 398; *see also Edwards v. Wyeth, Inc.,* No. 07-3921, 2008 WL 1908907, at *3 (D. Minn. Apr. 25, 2008) (stating that statute of limitations begins to run when "a cognizable physical manifestation of the

disease is present and there is evidence of a causal connection between the disease and the defendant's product, act, or omission." (citing *Klempka,* 963 F.2d at 170)).

At this early juncture of the case and without discovery, this Court cannot determine when Plaintiff's injury manifested itself or when she became aware that her injury was caused by Defendants' pain pump. For example, it may be that Plaintiff was not aware of the causal connection between her injury and Defendants' pain pump until 2007 at the earliest, when the first article was published that linked pain pumps and chondrolysis. *See Mack*, 2010 WL 4386898, at *2 (concluding that Plaintiff's claims arising out of August 1, 2002 pain pump implant were not time-barred by the relevant limitations period for strict product liability, negligence, breach of warranty, and fraud). And, in any event, Plaintiff alleges fraudulent concealment or Defendants' intentional prevention of discovery, which operates to toll the statutes of limitations under Minnesota law.

B.      Second Surgery

The same is true of Plaintiff's claims relating to the second surgery and the subsequent pain pump implant. Even if this Court were to apply Texas law under Minnesota's borrowing statute, her claims would not be time-barred on the face of the Complaint. Texas courts have adopted a discovery rule that tolls the statute of limitations until the plaintiff discovers, or through the exercise of reasonable care and diligence should have discovered, the nature of the injury.

13

*See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) ("the [discovery] rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury"); *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140-141 (5th Cir. 1997) (same).

Based solely on the allegations in Plaintiff's Complaint, this Court cannot determine when Plaintiff discovered the nature of her injury. For example, the Complaint alleges that the first article linking pain pumps and chondrolysis was published in July 2007. But it may be that Plaintiff did not read that article or learn about the nature of her injury until the end of 2007 or beginning of 2008. *See Vaught*, at 1140 -1141 ("Vaught first consumed L-tryptophan from mid-1987 to 1988, more than two years before this action was filed in April 1993. On these facts, the district court concluded [on summary judgment] that the limitations period began in 1987, when Vaught first took L-tryptophan, but that it was tolled until April 1990, when the discovery period began. [ ] It was then that Vaught read the newspaper article; connected her symptoms with EMS; and contacted the lawyer's office. Therefore, she had two years from that point within which to file suit . . ."). In sum, at this early pre-discovery stage of the case, this Court is not prepared to conclude that Plaintiff's claims are time-barred on the face of the complaint and thus recommends that Defendants' motion to dismiss be denied.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings

herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motions to Dismiss (Doc. No 30), be **DENIED**.

Date: November 23, 2010     *s/ Jeffrey J. Keyes*
                                                JEFFREY J. KEYES
                                                United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 7, 2010,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.